2022 PA Super 221

| ERIE INSURANCE EXCHANGE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ELIZABETH BACKMEIER, INDIVIDUALLY AND IN HER CAPACITY AS THE EXECUTRIX OF THE ESTATE OF ANDREW J. BACKMEIER | : | No. 323 WDA 2022 |
| Appellant | : | |

Appeal from the Judgment Entered March 7, 2022
In the Court of Common Pleas of Erie County Civil Division at No(s):  No. 11590-2021

BEFORE:   OLSON, J., DUBOW, J., and COLINS, J.*

OPINION BY OLSON, J:.                    **FILED: DECEMBER 28, 2022**

Appellant, Elizabeth Backmeier, individually and in her capacity as the executrix of the Estate of Andrew J. Backmeier, appeals from a March 7, 2022 declaratory judgment entered in the Court of Common Pleas of Erie County. The judgment awarded $100,000.00 in favor of Appellant, and against Erie Insurance Exchange ("Erie Insurance"), after the trial court granted Erie Insurance's motion for judgment on the pleadings and denied Appellant's cross-motion for judgment on the pleadings.  We affirm.

The trial court summarized the factual history as follows:

The facts of this case are undisputed.  On September 25, 2020, [Appellant's son,] Andrew Backmeier, was riding his bicycle when he was struck[ and killed] by the [underinsured motorist's] vehicle.   [Appellant] sought recovery through her insurance

_____

* Retired Senior Judge assigned to the Superior Court.

carrier[, Erie Insurance,] for underinsured motorist [("UIM")] coverage [] provided by her two insurance policies[.] The two [insurance] policies each provided $100,000[.00] in UIM benefits per [person], $300,000[.00] per occurrence, unstacked. [Appellant] executed stacking waivers on both policies. Both [insurance] policies contained a "Limit of Protection" provision which capped total recovery under all household policies at the highest limit available under any single policy. [Erie Insurance] tendered a total of $100,000[.00] of UIM coverage ($50,000[.00] from each policy) pursuant to the "Limit of Protection" clause[.]

Trial Court Opinion, 3/7/22, at 1.

On July 21, 2021, Erie Insurance filed a complaint for declaratory judgment against Appellant, asking the trial court to declare, *inter alia*, that Appellant's total recovery of UIM benefits under the applicable insurance policies should be set at $100,000.00. Erie Insurance's Complaint, 7/21/21, at 6. On September 21, 2021, Appellant filed an answer to the complaint, as well as a counterclaim for declaratory judgment, asking the trial court to declare that the total recovery of UIM benefits due under the applicable insurance policies should be set at $200,000.00. Appellant's Answer, New Matter, and Counterclaim, 9/21/21, at unnumbered page 5. Erie Insurance filed a reply to Appellant's counterclaim on October 8, 2021, which raised, as new matter, the assertion that, *inter alia*, Appellant's counterclaim failed to state a claim upon which relief could be granted pursuant to the terms of the two applicable insurance policies. Erie Insurance's Reply and New Matter, 10/8/21, at 6-8. Appellant filed a reply to Erie Insurance's new matter on October 26, 2021.

On November 22, 2021, Erie Insurance filed a motion for judgment on the pleadings, as well as a brief in support thereof. On January 7, 2022, the trial court granted Erie Insurance's motion for judgment on the pleadings. In its order, the trial court noted that Appellant did not file a response to Erie Insurance's motion for judgment on the pleadings. Trial Court Order, 1/7/22. On January 13, 2022, Appellant filed a motion for reconsideration of the trial court's January 7, 2022 order, asserting that the parties stipulated Appellant had until January 23, 2022, to file a response to Erie Insurance's motion for judgment on the pleadings and that the trial court granted said motion prematurely without providing Appellant the opportunity to file a response by the agreed upon date. Appellant's Motion for Reconsideration, 1/7/22. On January 13, 2022, the trial court granted Appellant's motion for reconsideration and vacated its January 7, 2022 order. Trial Court Order, 1/13/22. On January 21, 2022, Appellant filed (1) a motion for leave to file an amended answer, new matter, and counterclaim to Erie Insurance's complaint, having attached thereto a copy of the proposed answer; (2) a cross-motion for judgment on the pleadings; and (3) a response in opposition to Erie Insurance's motion for judgment on the pleadings. On January 28, 2022, the trial court granted Appellant's motion to file an amended answer, new matter, and counterclaim, which Appellant filed that same day. On February 2, 2022, Erie Insurance filed a response, as well as a brief, in opposition to Appellant's cross-motion for judgment on the pleadings. Appellant filed a supplemental brief in opposition to Erie Insurance's motion

for judgment on the pleadings on February 14, 2022. On February 17, 2022, Erie Insurance filed a response to Appellant's amended answer, new matter, and counterclaim, and Appellant filed a reply to Erie Insurance's response on February 23, 2022. Finally, on February 24, 2022, Erie Insurance filed a supplemental brief in opposition to Appellant's cross-motion for judgment on the pleadings. On March 7, 2022, the trial court entered declaratory judgment in the amount of $100,000.00 in favor of Appellant and against Erie Insurance. The $100,000.00 award reflected the trial court's determination that Erie Insurance was entitled to judgment on the pleadings and the trial court's further determination that Appellant's cross-motion for judgment on the pleadings should be denied. This appeal followed.[1]

Appellant raises the following issues for our review:

[1.] Whether [Appellant] is entitled to collect the $100,000[.00] UIM coverage limit [under] both of her Erie Insurance auto [insurance] policies, for a[n aggregate] total of $200,000[.00], because the "limit of protection" clause in her [insurance] policies is unenforceable because it impermissibly provides only "gap" coverage rather than the "excess" coverage required by the [Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S.A. §§ 1701-1799.7,] as interpreted by [our] Supreme Court in **Generette v. Donegal Mut. Ins. Co.**[, 957 A.2d 1180 (Pa. 2008)]?

[2.] Whether [Appellant] is entitled to collect the $100,000[.00] UIM coverage limit [under] both of her Erie Insurance auto [insurance] policies, for a[n aggregate] total of $200,000[.00], because she may "stack" the coverages

---

[1] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

because the stacking waivers she executed do not preclude inter-policy stacking under the circumstances of this case?

Appellant's Brief at 4 (extraneous capitalization omitted).

Appellant's issues challenge a trial court order that granted judgment on the pleadings in favor of Erie Insurance and that denied Appellant's cross-motion for judgment on the pleadings. Our standard and scope of review when considering an order that disposes of a motion for judgment on the pleadings is well-settled.

> Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C[iv].P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.
>
> Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well[-]pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.
>
> We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Southwestern Energy Prod. Co. v. Forest Res., LLC*, 83 A.3d 177, 185 (Pa. Super. 2013), *appeal denied*, 96 A.3d 1029 (Pa. 2014).

Based on the nature of Appellant's issues, we will address them *simul ut unum*. Before beginning our review, however, we first examine the terms

of Appellant's insurance policies.[2]   Appellant's insurance policy number Q01 XXXX622 ("the 622 Policy") lists on its Declaration page coverage for two "vehicles," a 2008 Mazda CX-9 all-wheel-drive motor vehicle and a 2000 homemade ("HMDE") trailer.  ***See*** The 622 Policy Declaration, at 1.  The Declaration further shows Appellant had UIM coverage on the Mazda motor vehicle as follows: "Bodily Injury $100,000[.00] per person / $300,000[.00] per accident - Unstacked[.]" ***Id.*** at 2.  Appellant did not have UIM coverage for the HMDE trailer.  ***Id.***  The 622 Policy defines the term "auto" as:

> Any land "motor vehicle" with at least four wheels except a:
> 1. vehicle designed for use principally off public roads;
> 2. vehicle operated on rails or crawler treads;
> 3. vehicle located for use as a residence;
> 4. "miscellaneous vehicle."

***See*** The 622 Policy – General Policy Definitions, at 2.  The term "motor vehicle" is defined as:

> any vehicle that is self-propelled and is required to be registered under the laws of the state in which "you" [(referring to the insured, which in this case is Appellant)] reside at the time this policy is issued.  "Motor vehicle" does not include a vehicle:
> 1. Propelled solely by human power;
> 2. Propelled by electric power obtained from overhead wires;
> 3. Operated on rails or crawler treads;

---

[2] In reproducing portions of Appellant's insurance policies, we have omitted some bold-faced text.

> 4. Located for use as a residence or premises; or
>
> 5. Which is a lawn and garden tractor or mower or similar vehicle.

*Id.* The term "miscellaneous vehicle" is defined as "a motorcycle (including a motorcycle with a sidecar), moped, snowmobile, golf cart, all[-]terrain vehicle[,] and any similar recreational vehicle. It does not include a lawn and garden tractor or mower or similar vehicle." *Id.* The term "trailer" is defined as "a vehicle designed to be pulled by a 'private passenger auto,' if not being used for business purposes except with a 'private passenger auto.' In the Liability Protection section of this policy, 'trailer' includes a farm wagon or farm implement while used with a 'private passenger auto.'" *Id.* at 3 (extraneous capitalization omitted) Finally, a "private passenger auto" is defined as:

> a four wheel land "motor vehicle" designed mainly to transport people on public roads. It includes station wagons and the following types of vehicles, even with dual rear wheels, when not used for business purposes, except farming or ranching:
>
> 1. Motor homes;
>
> 2. Pickups; and
>
> 3. Vans.

*Id.* at 2.

Under the "Limit of Protection" section of the Uninsured/Underinsured Motorist Coverage Endorsement, the 622 Policy states, in pertinent part,

> Uninsured/Underinsured Motorists Coverage is not provided for any "trailer," whether or not the "trailer" is attached to another motor vehicle or "miscellaneous vehicle." No separate limit of protection for Uninsured/Underinsured Motorists Coverage is available for a "trailer," whether attached or unattached to a motor vehicle or "miscellaneous vehicle." . . .

**Stacked Coverage**

If Stacked Uninsured Motorists and/or Stacked Underinsured Motorists Coverage is purchased and the injured person is "you" or a "relative," "we" will pay no more than the applicable sum of the Uninsured or Underinsured Motorists Coverage limits shown on the "Declarations."

If the injured person is other than "you" or a "relative," "we" will pay no more than the applicable Uninsured or Underinsured Motorists Coverage limits shown on the "Declarations" for the "auto" involved in the accident, regardless of the number of persons "we" protect, "autos we insure," premiums paid, claims made or "autos" involved in the accident. If none of the "autos" are involved in the accident, the highest limit of Uninsured or Underinsured Motorists Coverage applicable to any one "auto" will apply.

**Unstacked Coverage**

If Unstacked Uninsured Motorists and/or Unstacked Underinsured Motorists Coverage is purchased, "we" will pay no more than the Uninsured or Underinsured Motorists Coverage limits shown on the "Declarations" for the "auto" involved in the accident, regardless of the number of persons "we" protect, "autos we insure," premiums paid, claims made or "autos" involved in the accident. If none of the "autos" are involved in the accident, the highest limit of Uninsured or Underinsured Motorists Coverage applicable to any one "auto" will apply.

If other similar insurance applies to "autos" not involved in the accident, and the insurance provides coverage to "you" or a "relative," then recovery will not exceed the highest limit of liability for any one "auto" under any one policy providing coverage for "you" or a "relative."

*See* The 622 Policy - Uninsured/Underinsured Motorists Coverage Endorsement, at 3-4.

Appellant's second insurance policy, policy number Q09 XXX1042 ("the 1042 Policy"), lists only a single motor vehicle, a 2003 Chevy Silverado truck, as "autos covered" on the policy's Declaration page. *See* The 1042 Policy

Declaration, at Item 4.  The 1042 Policy states that UIM coverage is provided for bodily injury in the amount of $100,000.00 per person and $300,000.00 per accident "unstacked." *Id.* at Item 5.  The 1042 Policy includes, *inter alia*, a "limits of protection" section in the Uninsured/Underinsured Motorists Coverage Endorsement similar to the 622 Policy, as discussed *supra*, including the following language under the "Unstacked Coverage" section,

> If other similar insurance applies to autos not involved in the accident, and the insurance provides coverage to you or a relative, then recovery will not exceed the highest limit of liability for any one auto under any one policy providing coverage to you or a relative.

*See* The 1042 Policy – Uninsured/Underinsured Motorists Coverage Endorsement, at 4.

Both the 622 Policy and the 1042 Policy contain identical waiver of stacking forms, which state:

> By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy.  Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy.  I knowingly and voluntarily reject the stacked limits of coverage.  I understand that my premiums will be reduced if I reject this coverage.

*See* The 622 Policy – Underinsured Coverage Limits Waiver, 1/18/18; *see also* The 1042 Policy – Underinsured Coverage Limits Waiver, 9/23/20.

The waiver form for the 622 Policy was electronically signed by Appellant on January 18, 2018. The waiver form for the 1042 Policy was executed by Appellant on September 23, 2020.

With the pertinent terms of Appellant's insurance policies in mind, we now turn to Appellant's claims challenging the entry of judgment on the pleadings in favor of Erie Insurance. In sum, Appellant asserts that the 622 Policy waiver form was ineffective in waiving inter-policy stacking and, therefore, she is entitled to UIM coverage in the aggregate amount of $200,000.00 ($100,000.00 per policy). Appellant further maintains that payment of stacked UIM coverage is unrestricted by the limit of protection clause capping total coverage to "the highest limit of liability for any one 'auto' under any one policy" since that provision violates the MVFRL and is unenforceable. Appellant's Brief at 11-36. For the reasons discussed below, we disagree.

While the purchase of UIM coverage is optional within Pennsylvania, the MVFRL requires insurance companies, such as Erie Insurance, to offer such coverage to its policyholders. 75 Pa.C.S.A. § 1731(a) (stating, "**Mandatory offering**.--No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless [UIM] motorist coverage[ is] offered therein or supplemental thereto"). The intent of UIM coverage is to "provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover

damages therefor from owners or operators of underinsured motor vehicles."

75 Pa.C.S.A. § 1731(c). "UIM coverage is triggered when the tortfeasor's liability coverage is not sufficient to cover the injuries [sustained] in an accident." *Generette*, 957 A.2d at 1189. Section 1733 sets forth the priority of recovery when seeking UIM coverage as follows:

> Where multiple policies apply, payment shall be made in the following order of priority:
>
> (1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.
>
> (2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.

75 Pa.C.S.A. § 1733(a)(1) and (a)(2).

> The basic concept of stacking is the ability to add the coverages available from different vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy. Additionally, there are two types of stacking, inter-policy and intra-policy.
>
> Intra-policy stacking is when more than one vehicle is insured under a single policy of insurance. For example: three cars insured under a single policy providing [$15,000.00 per person / $30,000.00 per occurrence] UIM benefits. If stacked, an insured is entitled to a total of $45,000[.00] in []UIM benefits - three vehicles insured at $15,000[.00] each equaling $45,000[.00] in total coverage. If unstacked, only $15,000[.00] is available in []UIM coverage.
>
> Inter-policy stacking[] is the addition of coverages for vehicles insured under different policies of insurance. For example: the same three cars, now separately insured all providing stacked [$15,000.00 per person / $30,000.00 per occurrence] UIM coverage. [Pursuant to the concept of inter-policy stacking, the] injured insured may still collect the $45,000[.00] in total

coverage, the value of each policy being added together - $15,000[.00] + $15,000[.00] + $15,000[.00].

***McGovern v. Erie Ins. Group***, 796 A.2d 343, 344-345 (Pa. Super. 2002) (citation omitted), *appeal denied*, 809 A.2d 904 (Pa. 2002).

Section 1738, which sets forth the concepts of stacking and waiver of stacking, states,

### § 1738. Stacking of uninsured and underinsured benefits and option to waive

**(a) Limit for each vehicle.** - When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

**(b) Waiver.** - Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

**(c) More than one vehicle.** - Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

**(d) Forms.** -

. . .

(2) The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:

### UNDERINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

_____
Signature of First Named Insured

_____
Date

**(e) Signature and date.** - The forms described in subsection (d) must be signed by the first named insured and dated to be valid. Any rejection form that does not comply with this section is void.

75 Pa.C.S.A. § 1738(a) - (e).

In the instant matter, Appellant asserts that because the 622 Policy insured "more than one vehicle[,]" she did not knowingly waive inter-policy stacking and, as such, she is entitled to "stack" the UIM coverage limits of the 622 Policy ($100,000.00) and the 1042 Policy ($100,000.00) for an aggregate recovery of $200,000.00. Appellant's Brief at 32-33. Appellant asserts that "when [a] policyholder[, such as herself,] purchases a policy that insures more than one vehicle[, as she contends is the case with the 622 Policy,] the language of the waiver form does not make it clear that the insured is waiving stacking for more than one policy, as opposed to simply the [insurance] policy on which they have been asked to sign the waiver, so the insured may combine, or 'stack,' the coverages of both policies." *Id.* at 33.

Our Supreme Court, in **Craley v. State Farm Fire and Cas. Co**, 895 A.2d 530 (Pa. 2006), in addressing Section 1738 inter-policy waiver of stacking, held that a policyholder knowingly waives inter-policy stacking when (1) the policyholder executes a waiver form which conforms with Section 1738(d), and (2) the insurance policy insures only a single vehicle. **Craley**, 895 A.2d at 536, 541-542. The **Craley** Court explained that a policyholder cannot reasonably believe that he or she waives only intra-policy stacking to receive a reduced premium where an insurance policy covers a single motor vehicle. **Id.** As such, when an insurance policy covers only a single motor vehicle, the policyholder knowingly waives inter-policy stacking when executing a waiver form that conforms to Section 1738(d). **Id.** In other words, when an insurance policy covers only one motor vehicle, there can be no intra-policy stacking (stacking of UIM coverage on two or more motor vehicles covered by the same insurance policy) because there is no second motor vehicle with UIM benefits covered by that single insurance policy upon which to combine, or "stack," the UIM coverage from the first motor vehicle with UIM benefits. Therefore, when a policyholder executes a Section 1738(d) waiver form for an insurance policy where there is no possibility of intra-policy stacking, it logically flows that the policyholder knowingly waives inter-policy stacking in exchange for a reduced premium. **Id.** at 542 (stating, "[a]bsent the applicability of intra-policy waiver, the only interpretation fairly available to [the policyholder] was that his premium-reducing waiver applied to

inter-policy stacking"); *see also Erie Ins. Exch. v. Petrie*, 242 A.3d 915, 920 (Pa. Super. 2020).

The *Craley* Court left unresolved, however, whether a policyholder can knowingly waive inter-policy stacking by executing a Section 1738(d) waiver form when the insurance policy covers more than one motor vehicle.[3] *Craley*, 895 A.2d at 542 n.18.  The *Craley* Court explained that where the policyholder has two or more insurance policies that each include UIM coverage on more than one motor vehicle, the language mandated by the Section 1738(d) waiver form – "I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy" – could lead a policyholder to reasonably assume "that he[, or she,] received a reduced premium for waiver of the stacking of the limits regarding the vehicles insured by [the single policy, *i.e.*, intra-policy stacking waiver,] with no knowledge that he[or she,] was waiving stacking of the applicable limits of [the multiple policies, *i.e.*, inter-policy stacking waiver]." *Id.* at 542.  In other words, according to the *Craley* Court, when a single insurance policy covers two or more motor vehicles each having UIM coverage, a policyholder, by executing the Section

_____

[3] It is well-established that Section 1738 permits waiver of intra-policy stacking when the policyholder executes a valid waiver form that conforms to Section 1738(d) and the single insurance policy covers two or more motor vehicles each providing UIM coverage.  *Craley*, 895 A.2d at 539-540; *see also* 75 Pa.C.S.A. § 1738.

1738(d) waiver form, knowingly waives intra-policy stacking, but it is unclear whether the prescribed waiver form establishes that the policyholder understood that he or she knowingly waived inter-policy stacking. **See id** at 542 n.18 (calling upon the legislature or the insurance commissioner for the Commonwealth of Pennsylvania to clarify whether and how insurers may secure a valid waiver of inter-policy stacking in such a case).

Several years later, this Court, in **Petrie**, **supra**, addressed the circumstance whereby a policyholder executed a Section 1738 waiver form for an insurance policy that covered two or more motor vehicles each having UIM coverage. The **Petrie** Court held that, in the instance where the insurance policy provided UIM coverage for more than one vehicle, the waiver of stacking form must "explicitly provide for inter-policy" stacking waiver, and it was incumbent upon the insurance company to supplement the Section 1738(d) waiver form or "otherwise fulfill its obligation to secure a knowing waiver of inter-policy stacking." **Petrie**, 242 A.3d at 921. In other words, the execution of a Section 1738(d) waiver form pertaining to an insurance policy that covered two or more motor vehicles each providing UIM coverage waived **only** intra-policy stacking. The waiver form, as prescribed by Section 1738(d), did not, in that instance, indicate that the policyholder waived inter-policy stacking. To waive inter-policy stacking, the **Petrie** Court held that the Section 1738(d) waiver form must be supplemented with a statement that explicitly states the policyholder waives inter-policy stacking.

Here, the trial court, in granting Erie Insurance's motion for judgment on the pleadings, stated,

> [the 622 policy] provided coverage on one motor[ ]vehicle and one trailer[.] Thus [the 622 policy] was not a "multi-vehicle" policy. Per the terms of [the 622 policy], UIM coverage was applicable to the motor[ ]vehicle only. Thus, the stacking waivers executed on both of [Appellant's] policies effectively waived stacking of the UIM coverage.

Trial Court Opinion, 3/7/22, at 3.

As discussed *supra*, the 622 Policy provided insurance coverage on a motor vehicle (2008 Mazda CX-9) and a homemade trailer.[4] In particular, the 622 Policy provided UIM coverage on only the motor vehicle, and the "Limit of Protection" section of the Uninsured/Underinsured Motorist Coverage

---

[4] Section 1702 of the MVFRL does not define the terms "vehicle," "motor vehicle," or "trailer." 75 Pa.C.S.A. § 1702. Section 102 of the Vehicle Code, however, defines "motor vehicle" as "a vehicle which is self-propelled" and defines "trailer" as "a vehicle designed to be towed by a motor vehicle." 75 Pa.C.S.A. § 102. Thus, we find the Section 102 definitions of the Vehicle Code appliable to the MVFRL because the MVFRL does not provide definitions of these terms.

Under these Section 102 definitions, it is apparent that the term "vehicle" includes both a "motor vehicle" and a "trailer" but the terms "motor vehicle" and "trailer" are mutually exclusive as a "motor vehicle" is self-propelled and a "trailer" must be towed and, therefore, is not self-propelled.

In the instant case, the definitions of "motor vehicle" and "trailer" contained within Appellant's insurance policies track the definitions offered by Section 102 of the Vehicle Code. Therefore, while Appellant's 2008 Mazda CX-9 and trailer both qualify as a "vehicle," the 2008 Mazda CX-9 also qualifies as a "motor vehicle" while the homemade trailer qualifies only as a "trailer." Consequently, we shall refer to the two "vehicles" as a "motor vehicle" and "trailer," respectively.

Endorsement explicitly stated that "[UIM coverage] is not provided for any 'trailer' whether or not the 'trailer' is attached to another motor vehicle or 'miscellaneous vehicle.'"[5]  Applying the definitions included within the relevant statutory provisions and the insurance policies at issue in this case, we conclude that Appellant understood she paid a premium for insurance coverage that included UIM benefits on only one motor vehicle.

The waiver form executed by Appellant conformed with the requirements of Section 1738(d).  Although Erie Insurance did not supplement the waiver form by including language explicitly waiving inter-policy stacking, Appellant waived inter-policy stacking under the circumstances of the case *sub judice* because the 622 Policy provided UIM coverage on a single motor vehicle.  The 622 Policy did not provide UIM coverage on multiple motor vehicles and, thus, was not a "multi-motor vehicle" insurance policy.  Therefore, under the facts of this case, the Section 1738(d) waiver of stacking form could not be understood by a policyholder to waive intra-policy stacking since multiple motor vehicles capable of allowing stacking of UIM coverage were not covered under the 622 Policy.  As such, when Appellant executed

_____

[5] The exclusion of the trailer from UIM coverage is permitted by Section 1731 of the MVFRL, which states, in pertinent part, that "no **motor vehicle** liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any **motor vehicle** registered or principally garaged in this Commonwealth, unless [UIM coverage is] offered therein or supplemental thereto[.]"  75 Pa.C.S.A. § 1731(a) (emphasis added).  Thus Section 1731(a) does not require UIM coverage to be offered on a trailer because a trailer does not qualify as a motor vehicle, as discussed *supra*.

the Section 1738(d) waiver form in the case *sub judice*, Appellant knowingly waived inter-policy stacking in exchange for her reduced premiums, since intra-policy stacking was not an option.

In addition, Appellant waived inter-policy stacking on the 1042 Policy because (1) the insurance policy covered only a single motor vehicle, and (2) the waiver form conformed with Section 1738(d). **Craley**, 895 A.2d at 536, 541-542. Similarly, Appellant waived inter-policy stacking on the 622 Policy because (1) the policy covered only a single motor vehicle, and (2) the waiver form conformed with Section 1738(d). **Id.** Therefore, we concur with the trial court, and the record supports, that Appellant waived stacking under both of her insurance policies.

Appellant also challenges the trial court's order granting declaratory judgment in favor of Appellant in the amount of $100,000.00 on the ground that the limit of protection clause in her insurance policies violates the MVFRL and, as such, is unenforceable as a means of limiting her UIM coverage to $100,000.00. Appellant's Brief at 11-24. Appellant asserts that the limit of protection clause violates the MVFRL because the clause converts her UIM coverage into "gap" coverage rather than "excess" coverage, as required by the MVFRL. **Id.** at 14.

It is well-established that the definition of "underinsured motor vehicle" – [a] motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages – requires "excess" UIM coverage and not "gap" UIM coverage. **Allwein v. Donegal**

*Mut. Ins. Co.*, 671 A.2d 744, 747-750 (Pa. Super. 1996), *appeal denied*, 685 A.2d 541 (Pa. 1996); *see also Generette*, 957 A.2d at 1191 (agreeing that, "the MVFRL's definition of an underinsured motorist requires the provision of excess rather than gap [UIM] coverage because the definition is framed in terms of the total of the [injured insured's] losses rather than the [injured insured's] own insurance coverage limits"); 75 Pa.C.S.A. § 1702 (defining "underinsured motor vehicle"). Our Supreme Court in *Generette*, *supra*, explained the concepts of "excess" UIM coverage and "gap" UIM coverage as follows:

> ["Excess"] UIM coverage[] aims to maximize the potential for full compensation to the injured insured. Thus, excess UIM [coverage] gives to the injured insured a fund that supplements the fund provided by the tortfeasor's liability coverage, up to the injured insured's UIM policy limits or until he[, or she,] is compensated for his[, or her,] losses. ["Gap"] UIM coverage[] aims to place the injured insured in the same position he[, or she,] would have occupied had the tortfeasor carried liability coverage in an amount that matches the injured insured's UIM coverage. Thus, gap UIM coverage gives to the injured insured a fund that fills in any gap between the tortfeasor's liability coverage and the injured insured's UIM policy limit. [By way of an example illustrating the distinction between excess and gap UIM coverages, s]uppose that an injured insured is legally entitled to damages of $100,000[.00 and] that the tortfeasor's liability insurance is $20,000[.00] and that the injured insured's UIM coverage limit is $50,000[.00]. Under excess UIM coverage, the injured insured's total recovery is $70,000[.00], with UIM coverage of $50,000[.00] being paid in addition to the amount the [injured] insured receives under [the tortfeasor's] liability coverage, $20,000[.00]. Under gap UIM coverage, the injured insured's total recovery is $50,000[.00], with the first $20,000[.00] coming from the tortfeasor's liability coverage and the remaining $30,000[.00], coming from the injured insured's UIM coverage, to fill in the gap between the tortfeasor's liability coverage and the injured insured's UIM coverage.

***Generette***, 957 A.2d at 1186 n.12, *citing **Pennsylvania Nat'l Mut. Cas. Co. v. Black***, 916 A.2d 569, 583 (Pa. 2007) (Cappy, C.J. dissenting).

An injured insured may seek UIM coverage for his or her expenses related to injuries or damages caused by a third-party tortfeasor when the injured insured's expenses exceed a third-party tortfeasor's insurance coverage for such losses.  Section 1733 sets forth the priority for recovery of UIM benefits as follows:

> **§ 1733.  Priority of recovery**
>
> **(a) General rule.** - Where multiple policies apply, payment shall be made in the following order of priority:
>
>> (1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.
>>
>> (2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.
>
> **(b) Multiple sources of equal priority.** - The insurer against whom a claim is asserted first under the priorities set forth in subsection (a) shall process and pay the claim as if wholly responsible.   The insurer is thereafter entitled to recover contribution *pro rata* from any other insurer for the benefits paid and the costs of processing the claim.

75 Pa.C.S.A. § 1733(a) and (b).  UIM coverage under a policy covering a motor vehicle occupied by the injured party at the time of the accident is commonly referred to as "first priority UIM coverage."  ***See*** 75 Pa.C.S.A. § 1733(a)(1).  Correspondingly, UIM coverage under a policy covering a motor vehicle not involved in the accident to which the injured party qualifies as an

insured is commonly referred to a "second priority UIM coverage." **See** 75 Pa.C.S.A. § 1733(a)(2).

With an understanding of prioritization of recovery, we turn to our Supreme Court's decision in **Generette**, **supra**, in which Generette was a third-party guest in a motor vehicle when it was struck by another motor vehicle driven by a tortfeasor. **Generette**, 957 A.2d at 1182. Generette recovered for her damages first from the tortfeasor's insurance policy and then under a first priority UIM coverage policy that insured the motor vehicle she occupied at the time of the accident. **Id.** Because her damages exceeded the amount she recovered from both the tortfeasor's insurance policy and the first priority UIM coverage policy, Generette sought recovery under her own insurance policy, which insured a single motor vehicle to which she waived stacking of UIM coverage. **Id.** at 1182-1183 and n.3. Generette's insurance policy, in this instance, provided second priority UIM coverage because the insurance policy insured a motor vehicle that was not involved in the accident with the tortfeasor and Generette was an insured under the policy. 75 Pa.C.S.A. § 1733(a)(2). Generette's second priority UIM coverage policy contained a limit of protection clause that reduced the amount of second priority UIM coverage by the amount she received from the first priority UIM coverage policy. **Generette**, 957 A.2d at 1183 n4. The **Generette** Court concluded that a limit of protection clause that reduced second priority UIM coverage by the amount recovered under the first priority UIM coverage policy created gap, rather than excess, coverage in violation of the MVFRL excess

coverage requirement. *Id.* at 1192. In so holding, the ***Generette*** Court expanded the definition of "excess coverage," as set forth in ***Allwein***, ***supra***, by requiring that second priority UIM coverage be in excess of both the tortfeasor's liability coverage, as well as first priority UIM coverage, rather than simply requiring that the aggregate, available UIM coverage be in excess of the tortfeasor's liability coverage. ***See id.***; ***see also Allwein***, 671 A.2d at 747-750.

The ***Generette*** holding, however, is distinguishable from the case *sub judice*. ***Generette***, ***supra***, involved a limit of protection clause that violated the MVFRL's excess coverage requirement because the limiting clause reduced the amount of second priority UIM coverage by the amount of first priority UIM coverage received. The case *sub judice* involves whether the limit of protection clause found in both of Appellant's insurance policies (which under the circumstances presented here are two second priority UIM coverage polices) can limit the amount of second priority UIM benefits Appellant recovers to the highest amount of coverage provided by any single second priority UIM coverage policy where Appellant effectively waived inter-policy stacking.

Recently, our Supreme Court in ***Donovan v. State Farm Mut. Auto. Ins. Co.***, 256 A.3d 1145 (Pa. 2021) addressed a situation where Donavan, while operating his motorcycle, was struck by a tortfeasor's motor vehicle. ***Donovan***, 256 A.3d at 1147. Donovan first recovered for his damages under the tortfeasor's insurance policy and then under his own insurance policy that

insured his motorcycle, *i.e.*, first priority UIM coverage. ***Id.*** Donavan then sought to recover under his mother's insurance policy where he qualified as an "insured" because he was a resident relative.[6] ***Id.*** Donavan's mother signed a Section 1738(d) waiver form, but the ***Donovan*** Court determined that she did not knowingly waive inter-policy stacking. ***Id.*** at 1147, 1157, *relying on* ***Craley***, ***supra***.

The mother's insurance policy also included a "coordination of benefits" provision applicable upon a waiver of stacking, similar to the limit of protection clause in the case *sub judice*. ***Id.*** at 1160-1161. The coordination of benefits provision set the maximum recovery paid from all polices combined as the single highest appliable UIM coverage limit provided by any one insurance policy.[7] ***Id.*** The ***Donovan*** Court stated that such a coordination of benefits provision "implemented" a valid "waiver of inter-policy UIM stacking as it dictate[d] that the combined coverage is limited by the highest limit of any single policy rather than providing for the addition of coverage." ***Id.*** at 1160-1161. Because Donovan's mother did not validly waive inter-policy

---

[6] Donovan's mother's insurance policy covered three motor vehicles but did not cover Donovan's motorcycle. ***Donovan***, 256 A.3d at 1147.

[7] The coordination of benefits provision that applied to unstacked UIM coverage in ***Donovan***, ***supra***, stated, "the maximum amount that may be paid from all such polices [(referring to policies underwritten by State Farm Insurance companies that provided for UIM coverage to Donavan as an insured)] combined is the single highest applicable limit provided by any one of the policies. We may choose one or more policies from which to make payment." ***Donovan***, 256 A.3d at 1148.

stacking *via* a Section 1738(d) waiver form, however, the ***Donovan*** Court held that the coordination of benefits provision applicable to an unstacked policy could not "operate as a *de facto* waiver of inter-policy stacking." ***Donovan***, 256 A.3d at 1161. In other words, an insurance carrier cannot rely on such a coordination of benefits provision to effectively assert waiver of inter-policy stacking. Inter-policy stacking can only be waived when the policyholder knowingly waives inter-policy stacking by executing a Section 1738(d) waiver form and the insurance policy covers only one motor vehicle with UIM coverage, or when the policyholder executes a supplemental statement, in conjunction with a Section 1738(d) waiver form, that explicitly waives inter-policy stacking when the insurance policy covers two or more motor vehicles with UIM coverage.

The ***Donovan*** Court further held that the coordination of benefits provision did not prevent Donovan's recovery under the second priority coverage policy because the provision was only appliable upon waiver of stacking and, in Donovan's case, inter-policy stacking (*i.e.*, the stacking of the mother's UIM coverage on top of the UIM coverage provided by Donovan's policy) had not been validly waived. ***Id.*** In reaching its holding, the ***Donovan*** Court declined to address whether the coordination of benefits provision violated "the MVFRL's provision for excess rather than gap [UIM] coverage" because the issue "was not encompassed in the issues granted review." ***Id.*** at 1161 n.23. Thus, the issue raised in the case *sub judice* – whether a limit of protection clause capping second priority UIM coverage to the highest limit

of liability of any single second priority UIM coverage policy violates the MVFRL's excess coverage requirement – remains unresolved and, thus, presents an issue of first impression for this Court.[8]

We are mindful that when interpreting insurance policies, "we must apply general principles of contract interpretation, as, at base, an insurance policy is nothing more than a contract between an insurer and an insured." *Gallagher v. Geico Indem. Co.*, 201 A.3d 131, 137 (Pa. 2019).

> In so doing, we must ascertain the intent of the parties as manifested by the terms used in the written insurance policy. Just as in statutory construction, when the language of the policy is clear and unambiguous, a court is required to give effect to that language. Importantly, however, provisions of insurance contracts are invalid and unenforceable if they conflict with statutory mandates because contracts cannot alter existing laws.

*Id.* (citations, quotation marks, and brackets omitted); *see also Allwein*, 671 A.2d at 752 (stating, "[a]s a general rule, stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the

_____

[8] We are cognizant that this issue was addressed recently by the Federal District Court for the Eastern District of Pennsylvania in *Meyers v. Travelers Ins. Co.*, ___ F.Supp.3d ___, 2022 WL 1028705 (E.D. Pa. filed Apr. 6, 2022) (slip copy). Although this Court is not bound by the decisions of federal district courts, we find persuasive the rationale set forth in *Meyers*, *supra*. *See Northern Forests II, Inc. v. Keta Realty Co.*, 130 A.3d 19, 36 (Pa. Super. 2015) (stating, "[a]lthough we are not bound by the holdings of federal district courts, [this Court] may utilize the reasoning in these decisions to the extent we find them persuasive").

statute, and are invalid, since contracts cannot change existing statutory laws").

To reiterate, the MVFRL requires excess UIM coverage. As the *Allwein* Court noted, excess UIM coverage is "limited only by the [injured insured's] damages or the policy limits, whichever is smaller." *Allwein*, 671 A.2d at 747. In enacting the MVFRL, the Legislature intended to reduce consumer costs of motor vehicle insurance while affording an injured party "the greatest possible coverage" for damages sustained. *Id.* at 750. In construing the MVFRL and contractual provisions of an insurance policy that are not in contravention of the statute, we are mindful that the insured is entitled to receive the maximum benefits for which he or she has paid premiums, and the insurer is required to provide coverage to the extent the insured contractually agreed to and paid for such coverage under the terms of the insurance policy. *See Craley*, 895 A.2d at 542; *see also Generette*, 201 A.3d at 138 (stating, "[o]ne of the insurance industries' age-old rubrics . . . is that an insured should receive the coverage for which he[, or she,] has paid").

As discussed *supra*, Section 1733(a) sets forth the order of priority by which an injured insured may seek UIM benefits. As caselaw has held, an insurance policy limit of protection clause may not reduce first priority UIM coverage by the amount received from the tortfeasor's insurance policy. *Allwein*, 61 A.2d at 746, 758. Similarly, an insurance policy limit of protection clause may not reduce second priority UIM coverage by the amount received from either the tortfeasor's insurance policy or the first priority UIM coverage

policy, or a combination of both. ***Generette***, 957 A.2d at 1191-1192. Neither ***Allwein***, ***supra***, nor ***Generette***, ***supra***, are on all fours with the case *sub judice*, which asks whether a limit of protection clause may reduce or limit the amount of second priority UIM coverage when more than one second priority UIM coverage policy is applicable. For the following reasons, we find that, under the circumstances of the case *sub judice*, such a limit of protection clause does not violate the MVFRL's excess coverage requirement when stacking has knowingly and effectively been waived. ***See Meyers***, ***supra***.

First, we note that Section 1733 is silent on whether limitations may be placed on the total recovery received from policies of equal priority when stacking has been waived. ***See*** 75 Pa.C.S.A. § 1733. Section 1733 is also silent on the distinction between stacked and unstacked UIM coverage. ***Id.*** Rather, Section 1733 simply sets forth the prioritization for recovery of UIM benefits. Therefore, we turn to Section 1738 which deals specifically with the concepts of stacked and unstacked UIM coverage.

Because the case *sub judice* deals with a situation in which there has been a valid waiver of inter-policy stacking, we examine Section 1738(b), which deals with unstacked UIM coverage. Section 1738(b) states that when an injured insured waives stacking of UIM coverage, "the limits of coverage available under the policy for an insured shall be the **stated limits** for the motor vehicle as to which the injured person is an insured." 75 Pa.C.S.A. § 1738(b) (emphasis added). As directed by Section 1738(b), when determining the limits of UIM coverage of a policy in which stacking has been

waived, we must examine the "stated limits" contained within the insurance policy, including the stated coverage found on the Declaration page, as well as any limit of protection clauses found within the insurance policy. In the case *sub judice*, the insurance policies include limit of protection clauses appliable when stacking has been waived as follows:

> If other similar insurance applies to "autos" not involved in the accident [(i.e., second priority UIM coverage polices pursuant to Section 1733(a)(2))], and the insurance provides coverage to "you" or a "relative," then recovery will not exceed the highest limit of liability for any one "auto" under any one policy providing coverage for "you" or a "relative."

*See* The 622 Policy - Uninsured/Underinsured Motorists Coverage Endorsement, at 4; *see also* The 1042 Policy – Uninsured/Underinsured Motorists Coverage Endorsement, at 4.

A plain reading of these limit of protection clauses caps the UIM coverage provided by one or more second priority UIM coverage policies to the "highest limit of liability" for any one motor vehicle insured under any one second priority UIM coverage policy. In other words, the coverage limits of all second priority UIM coverage policies cannot be aggregated or "stacked" one upon the other, which is precisely how the concept of unstacked UIM coverage operates. To hold otherwise would permit a policyholder to waive stacking to receive a reduced premium and then permit stacking or aggregation of second priority UIM coverage. Thus, under the circumstances of the case *sub judice*, a limit of protection clause that caps second priority UIM coverage to the highest limit of liability of any single motor vehicle insured

under any one second priority UIM coverage policy merely implements the concept of waiver of stacking and does not create gap coverage in contravention of the MVFRL.[9]

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/28/2022

---

[9] We find support for our decision that such a limit of protection clause does not violate the MVFRL's requirement of excess coverage in Justice Wecht's dissent in *Gallaher*, *supra*, where he stated,

> Section 1738 governs an insured's binary choice to accept or reject stacking. It says nothing at all about insurance policy exclusions that limit, as a threshold matter, the scope of []UIM coverage. If the General Assembly had intended - either in Section 1738 or elsewhere - to bar insurance policy exclusions that limit the scope of []UIM coverage, it could (and presumably would) have done so explicitly. Indeed, the General Assembly did just that when it wished to prohibit other kinds of exclusions. *See*, *e.g.*, 75 Pa.C.S.[A.] § 1724(b) ([stating,] "[p]rovisions of an insurance policy which exclude insurance benefits if the insured causes a vehicular accident while under the influence of drugs or intoxicating beverages at the time of the accident are void[").

*Gallagher*, 201 A.3d at 142-143 (Wecht, J. dissenting).