**ESTATE OF Philip O'CONNELL, by and through the Administratrix of the Estate, Diane O'CONNELL, and Estate of Philip S. O'Connell, by and through the Administratrix of the Estate, Diane O'Connell, and Diane O'Connell, Appellants**

v.

**PROGRESSIVE INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued July 23, 2013.

Filed Oct. 8, 2013.

Reargument Denied Dec. 19, 2013.

Thomas F. Crawford, Langhorne, for appellants.

Daniel J. Twilla, Pittsburgh, for appellee.

BEFORE: BENDER, J., PANELLA, J., and FITZGERALD, J.*

OPINION BY BENDER, J.

The Estate of Philip O'Connell ("Father"), by and through the Administratrix of the Estate, Diane O'Connell; the Estate of Philip S. O'Connell ("Son"), by and through the Administratrix of the Estate, Diane O'Connell; and Diane O'Connell ("Mother") (collectively "Appellants") appeal from the order dated April 30, 2012, which sustained the preliminary objections of Progressive Insurance Company ("Progressive") and dismissed Appellants' complaint.[1] We affirm.

On June 20, 2007, Michael Weber ("Weber") was driving a 2003 Hyundai Tiburon owned by Father and Mother with the permission of Father. Father and Son were passengers in the vehicle when it was involved in a single-car accident, resulting in the deaths of Weber, Father, and Son.

The vehicle was covered by an auto insurance policy issued by Progressive. Following the accident, Progressive awarded the Estates of Father and Son $100,000 each in liability coverage. Weber maintained auto insurance issued by Allstate Insurance Company ("Allstate"). Allstate awarded the Estates of Father and Son $15,000 each in liability coverage.

The Progressive policy also provided $100,000 per person/$300,000 per accident in underinsured motorist ("UIM") coverage for each automobile covered by the policy. Three automobiles were covered by the policy, and the O'Connells opted to have their coverage stacked, entitling them to as much as $300,000 per person/$900,000 per accident in UIM coverage.

The Progressive policy defined UIM coverage in the following manner:

If you pay the premium for this coverage, we will pay for damages that an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:

1. sustained by an injured person;

2. caused by an accident; and

3. arising out of the ownership, maintenance, or use of an underinsured motor vehicle.

. . .

[An] "[i]nsured person" means:

a. you or a relative;

b. any person while operating a covered auto with the permission of you or relative; [and]

c. any person occupying, but not operating, a covered auto[.]

. . .

[An] "[u]nderinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for bodily injury is less than the damages that an insured person is entitled to recover from the owner or operator of the motor vehicle because of bodily injury.

An "underinsured motor vehicle" does not include any vehicle or equipment:

a. owned by you or a relative or furnished or available for the regular use of you or a relative;

---

* Former Justice specially assigned to the Superior Court.

1. Mother died during the pendency of this case. Following a lengthy delay, Karen Hancin was substituted for Mother as administratrix of the estates.

...

e. that is a covered auto; or

f. that is an uninsured motor vehicle.

Complaint, Ex. B, at 11–12 (emphasis omitted) (the "Policy").

Following the liability coverage payments, the Estates of Father and Son sought to recover UIM benefits from Progressive, asserting that Weber's automobile was an underinsured motor vehicle. Progressive denied payment on the ground that the vehicle involved in the accident belonged to Mother (hereinafter, the "O'Connells' vehicle") and, therefore, did not meet the definition of an underinsured motor vehicle.

Appellants filed a complaint asserting breach of contract and bad faith, based on the denial of UIM benefits. Progressive responded with preliminary objections in the nature of a demurrer. Following oral argument, the trial court sustained Progressive's objections and dismissed Appellants' complaint. Appellants timely appealed and filed a Pa. R.A.P. 1925(b) statement. The trial court issued an opinion.

Appellants raise the following issues, which we have restated for ease of analysis:

1. Whether the trial court misinterpreted the policy to preclude dual recovery of liability benefits and underinsured motorist benefits;

2. Whether the trial court (1) failed to identify Appellants as "class-one insureds," (2) failed to rely on the appropriate case law, and (3) failed to consider that there were two tortfeasors involved in the accident; and

3. Whether the trial court failed to apply the general rule that policy exclusions should be strictly construed against the insurer so as to provide the greatest possible coverage to an insured. *See* Appellants' Brief, at 4.

■■■ We exercise appellate jurisdiction under 42 Pa.C.S. § 742. We review a trial court order granting preliminary objections for an error of law and apply the same standard as the trial court. *See Albert v. Erie Ins. Exchange,* 65 A.3d 923, 927 (Pa.Super.2013).

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections [that] seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Albert,* 65 A.3d at 927–28 (quoting *Feingold v. Hendrzak,* 15 A.3d 937, 941 (Pa.Super.2011)).

■■■ When interpreting an insurance policy, our goal is "to ascertain the parties' intentions as manifested by the policy's terms." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 589 Pa. 317, 908 A.2d 888, 897 (2006) (quoting *401 Fourth Street v. Investors Ins. Gp.,* 583 Pa. 445, 879 A.2d 166, 170 (2005)). We must give effect to clear and unambiguous terms. *Kvaerner,* 908 A.2d at 897. "An insured may not complain that his or her reasonable expectations were frustrated by policy provisions and limitations [that] are clear and unambiguous." *Pempkowski v. State Farm Mut. Auto. Ins. Co.,* 451 Pa.Super. 61, 678 A.2d 398,

401 (1996) (citing *Frain v. Keystone Ins. Co.*, 433 Pa.Super. 462, 640 A.2d 1352, 1354 (1994)). However, when a policy provision is ambiguous, we will construe it in favor of the insured. *Pempkowski*, 678 A.2d at 401.

In this case, Progressive is obligated to provide UIM coverage when "an insured ... is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury ... sustained [and] arising out of the ownership, maintenance, or use of an underinsured motor vehicle." Policy, at 11. The relevant terms are clear and unambiguous: coverage under the policy is triggered when a tortfeasor's liability for the injury is dependent upon his ownership, maintenance, or use of an underinsured motor vehicle. That did not occur here. Weber was driving the O'Connells' vehicle when it was involved in a single-car accident. Appellants do not claim that the O'Connells' vehicle was underinsured, nor could they under the terms of the policy, which excludes from the definition of an underinsured motor vehicle any vehicle "owned by you or a relative" (the so-called "family car exception") or that is covered by Progressive under the policy (the "covered auto" exception). Policy, at 12.[2] Accordingly, we hold that under the plain terms of their policy, Appellants are not entitled to UIM coverage from Progressive. *Kvaerner*, 908 A.2d at 897; *Pempkowski*, 678 A.2d at 401.

 Nevertheless, Appellants contend that they are entitled to UIM coverage from Progressive because Weber failed to maintain sufficient coverage on his own vehicle insured by Allstate. Thus, according to Appellants, Weber's vehicle is an underinsured motor vehicle. In support of this contention, Appellants make three arguments, which we examine mindful that it

is the insureds' burden to establish coverage under an insurance policy. *See Erie Ins. Exch. v. Transamerica Ins. Co.*, 516 Pa. 574, 533 A.2d 1363, 1366–67 (1987).

 First, Appellants contend that the trial court erred in sustaining Progressive's preliminary objections because the policy at issue does not preclude dual recovery of liability benefits and UIM benefits. Rather, according to Appellants, the policy includes a set-off provision, which merely limits the amount of UIM benefits payable, citing in support *Penn. Nat'l Mut. Cas. Co. v. Black*, 591 Pa. 221, 916 A.2d 569, 581 (2007) (distinguishing between a dual recovery prohibition and a set-off provision). Progressive counters that the policy includes both a set-off provision and a dual recovery preclusion. According to Progressive, the dual recovery provision is implicit in the covered auto exception.

We need not examine this issue in detail. The distinction between a dual recovery preclusion and a set-off provision was not relevant to the trial court's decision, nor do we find it compelling on appeal. The premise of Appellant's theory of UIM coverage is that Weber's vehicle was underinsured. Thus, even if Progressive is correct in asserting that the covered auto exception operates to preclude dual recovery of liability and UIM benefits in this case, it does so only to the extent that it impacts the benefits available to the O'Connells' vehicle. Insurance coverage of Weber's vehicle is unaffected by the exception.

In their second argument, Appellants assert that the trial court's analysis was flawed in several respects. For example, Appellants contend that the trial court failed to distinguish between class-one in-

---

**2.** Appellants have not previously claimed that these exclusions are contrary to clearly ex-

pressed public policy, but see *infra*.

sureds and class-two insureds. According to Appellants, they are class-one insureds who are deemed to have paid the premiums for UIM coverage, and therefore, they are not seeking gratis coverage.

■ We disagree. Class-one insureds include (1) the named insured, (2) any designated insureds, and (3) the spouse and relatives of either, while residents of the same household. *See Jeffrey v. Erie Ins. Exch.*, 423 Pa.Super. 483, 621 A.2d 635, 644 (1993) (citing *Utica Mut. Ins. Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005, 1010 (1984)). The significance of the class-one designation lies in that "there is a correlation between the premiums paid by the insured and the coverage a claimant could reasonably expect to receive." *Jeffrey*, 621 A.2d at 645 (noting, for example, that pursuant to some policies, class-one insureds are entitled to receive stacked uninsured motorist benefits, provided premiums for the coverage are paid, whereas class-two insureds are not).

The trial court relied upon this definition and repeatedly identified Appellants as class-one insureds. Appellants' class-one status, however, does not insulate them from the clear and unambiguous terms of their policy. Appellants paid only for the UIM coverage defined in their policy, which is available when a tortfeasor's liability for injury to an insured is dependent upon the tortfeasor's ownership, maintenance, or use of an underinsured motor vehicle. Any expectations of additional coverage are not reasonable. *Pempkowski*, 678 A.2d at 401.

To permit coverage beyond what the policy provides would undermine the cost control policy addressed by the Motor Vehicle Financial Responsibility Law, 75 Pa. C.S. §§ 1701 *et seq.* ("MVFRL"):

The repeal of the No–Fault Act and the enactment of the MVFRL reflected a legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways. The legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL. This reflects the General Assembly's departure from the principle of "maximum feasible restoration" embodied in the now defunct No–Fault Act.

. . .

[This policy] functions to protect insurers against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure. Thus, operationally, insureds are prevented from receiving gratis coverage, and insurers are not compelled to subsidize unknown and uncompensated risks by increasing insurance rates comprehensively.

*Burstein v. Prudential Prop. & Cas. Ins. Co.*, 570 Pa. 177, 809 A.2d 204, 207–08 (2002). Despite recent precedent acknowledging that "the cost containment objective cannot be mechanically invoked," *Heller v. Pa. League of Cities and Municipalities*, 613 Pa. 143, 32 A.3d 1213, 1222 (2011), it remains "the dominant and overarching public policy." *Burstein*, 809 A.2d at 208 n. 3 (quoting *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234, 1235 (1994)); *see also Williams v. GEICO Gov't Employees Ins. Co.*, 613 Pa. 113, 32 A.3d 1195 (2011) (reaffirming the decision in *Burstein*).

■ Appellants also argue that we should draw a distinction between those cases in which there is only one liability insurance policy and those where two policies are implicated by an accident, citing in comparison *Cooperstein v. Liberty Mut. Fire Ins. Co.*, 416 Pa.Super. 488, 611 A.2d 721 (1992) (concluding that victim's estate could not recover both liability and UIM benefits under the same policy after a single-car accident), and *Pempkowski*, 678

A.2d at 403 (Pa.Super.1996) (observing that liability and uninsured motorist coverage may be available where a class-one passenger is injured in a two-car collision). Essentially, Appellants contend that UIM coverage should be available here because there are two vehicles—the O'Connells' vehicle and the Weber vehicle—insured by two unrelated policies.

In our view, only the O'Connells' vehicle is relevant to Appellant's claim, as it was the only vehicle involved in the. accident. Our Supreme Court set forth the rationale for UIM coverage in the following manner:

> The purpose of underinsured motorist coverage is to protect the insured (and his additional insureds) from the risk that a *negligent driver of another vehicle* will cause injury to the insured (or his additional insureds) and will have inadequate coverage to compensate for the injuries caused by his negligence.

*Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234, 1235–36 (1994) (quoting *Wolgemuth v. Harleysville Mut. Ins. Co.*, 370 Pa.Super. 51, 535 A.2d 1145, 1149 (1988)) (emphasis added). Thus, we conclude that the availability of UIM coverage requires a multi-vehicle accident. Under the facts of this case, Appellants' reliance on *Pempkowski* is not persuasive.

Within the context of their second argument, Appellants also assert that there are two tortfeasors relevant to Son's claim: Weber and Father.[3] Although raised in their 1925(b) statement, Appellants did not allege Father's negligence in their complaint, nor. did they assert this argument in response to Progressive's preliminary objections. Thus, we deem this argument waived. *See Steiner v. Markel*, 600 Pa. 515, 968 A.2d 1253, 1257–60 (2009) (finding waiver based on plaintiffs' failure to plead facts essential to support their claim and noting that a 1925(b) statement cannot resurrect an otherwise untimely claim). Absent waiver, however, we find Appellants' argument meritless. Our holding rests upon the plain terms of the insurance policy and our conclusion that the injuries to Father and Son did not arise out of the ownership, maintenance, or use of Weber's vehicle.

Finally, Appellants contend that the trial court failed to construe policy exclusions narrowly, against Progressive and in favor of UIM coverage. *See Miller v. Boston Ins. Co.*, 420 Pa. 566, 218 A.2d 275, 277 (1966) ("A defense based on an exception or exclusion in a policy is an affirmative one, and the burden is cast upon the defendant to establish it.") (quoting *Armon v. Aetna Cas. and Sur. Co.*, 369 Pa. 465, 87 A.2d 302, 304 (1952)); *First Pa. Bank, N.A. v. Nat'l Union Fire Ins.*, 397 Pa.Super. 612, 580 A.2d 799, 802 (1990) ("[E]xclusionary clauses should be strictly construed as a general matter."). Though we agree with Appellants' exposition of Pennsylvania law, its relevance to Appellants' arguments up to this point is unclear.

Appellants state that the trial court concluded that exclusions "a" and "e" applied to the O'Connells' vehicle and baldly assert that this conclusion was incorrect.[4] However, Appellants did not dispute that the O'Connells' vehicle was not an underinsured vehicle under the policy at any time prior to this appeal. *See* Complaint, Ex. C ("Letter"), at 3–4 (arguing that

---

3. Appellants now claim that Father negligently entrusted the vehicle to Weber but do not address the impact, if any, Father's alleged negligence may have on his own claim.

4. In their brief, Appellants inadvertently suggest that the trial court found exclusion "f" applied and misquote exclusion "f" to preclude coverage for "an insured motor vehicle." *See* Appellants' Brief, at 21. Exclusion "f" excludes from the definition of an underinsured motor vehicle an "uninsured motor vehicle." *See* Policy, at 12.

UIM coverage is triggered under Progressive's policy because Weber's vehicle had insufficient liability coverage from Allstate); Answer to Preliminary Objections, at 3 (same). Thus, to the extent Appellants now contend that the policy exclusions do not apply to the O'Connells' vehicle, we are constrained to find this argument waived. *See Steiner,* 968 A.2d at 1257–60; *see also McEwing v. Lititz Mut. Ins. Co.,* 2013 PA Super 171, 77 A.3d 639, 647 (2013) (quoting *Umbelina v. Adams,* 34 A.3d 151, 161 (Pa.Super.2011) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.")).

Absent waiver, we note further that the family car exception has long been held valid. *See Paylor,* 640 A.2d at 1240. Similarly, though the permissibility of the covered auto exception (or dual recovery preclusion) is fact-based, it also has been held valid. *See Nationwide Mut. Ins. Co. v. Cosenza,* 258 F.3d 197, 211 (3d Cir.2001) (listing Pennsylvania cases). Appellants offer no compelling reason to stray from this long-standing precedent.

To the extent we may infer from Appellants' final arguments that there are policy reasons to recognize UIM coverage based on their theory that Weber's vehicle was underinsured, we direct Appellants to our previous discussion regarding the policy addressed by the MVFRL and UIM coverage in particular. In our view, permitting Appellants to collect UIM benefits from Progressive based on the amount of liability coverage available under Weber's policy, when Weber's vehicle was not involved in the accident, undermines the cost containment policy inherent to the MVFRL and would afford them *gratis* coverage. *See Burstein,* 809 A.2d at 207–08; · *Paylor,* 640 A.2d at 1235–36.

For the above stated reasons, we find that the trial court correctly sustained Progressive's objections and dismissed Appellants' complaint. The Appellants are not entitled to UIM coverage from Progressive based on the clear and unambiguous terms of their policy. UIM coverage under the policy is triggered when a tortfeasor's liability for the injury is dependent upon his ownership, maintenance, or use of an underinsured motor vehicle. That did not occur in this case. Rather, Weber, the acknowledged tortfeasor, was driving the O'Connells' vehicle, not his own, when it was involved in a single-car accident. To permit UIM benefits to Appellants under these circumstances would run counter to the plain terms of their policy and undermine the public policy goals of the MVFRL.

Order affirmed.