J-A06033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| W. SCOTT BACLIT, ADMINSTRATOR OF THE ESTATE OF TIMOTHY S. BACLIT | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN C. SLOAN, AN ADULT INDIVIDUAL, SEA SHELL BAR, INC., A CORPORATION, KENNETH KUGEL, AN ADULT INDIVIDUAL, AND UNITED FINANCIAL CASUALTY COMPANY, A CORPORATION | : | No. 793 WDA 2023 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: UNITED FINANCIAL CASUALTY COMPANY | : | |
| | : | |

Appeal from the Order Entered July 3, 2023
In the Court of Common Pleas of Beaver County Civil Division at No(s):
10675 of 2022

| | | |
|---|---|---|
| W. SCOTT BACLIT, ADMINISTRATOR OF THE ESTATE OF TIMOTHY S. BACLIT, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN C. SLOAN, AN ADULT INDIVIDUAL, SEA SHELL BAR, INC., A CORPORATION, KENNETH KUGEL, AND ADULT INDIVIDUAL, AND UNITED FINANCIAL CASUALTY COMPANY, A CORPORATION | : | No. 794 WDA 2023 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: UNITED FINANCIAL CASUALTY COMPANY | : | |
| | : | |

Appeal from the Order Entered July 3, 2023
In the Court of Common Pleas of Beaver County Civil Division at No(s):
10675 of 2022

| | | |
|---|---|---|
| W. SCOTT BACLIT, ADMINISTRATOR OF THE ESTATE OF TIMOTHY S. BACLIT | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| STEVEN C. SLOAN, AN ADULT INDIVIDUAL, SEA SHELL BAR, INC. A CORPORATION, KENNETH KUGEL, AN ADULT INDIVIDUAL, AND UNITED FINANCIAL CASUALTY COMPANY, A CORPORATION | : : : : : : : : : : : | No. 795 WDA 2023 |
| APPEAL OF: UNITED FINANCIAL CASUALTY COMPANY | : : | |

Appeal from the Order Entered June 5, 2023
In the Court of Common Pleas of Beaver County Civil Division at No(s):
10675 of 2022

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED: July 23, 2024**

United Financial Casualty Company ("United") appeals from orders

granting summary judgment in favor of W. Scott Baclit, Administrator of the

Estate of Timothy S. Baclit, ("Administrator") and denying United's motion for

J-A06033-24

summary judgment.[1]  United claims that the commercial insurance policy issued to TKC Trucking, LLC ("TKC Trucking") did not cover its owner, Timothy S. Baclit ("Baclit"), individually, and therefore, Administrator is entitled to no recovery.  Finding that Baclit is an "insured" entitled to receive stacked underinsured motorist ("UIM") coverage under the Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"),[2] we affirm.

The parties stipulated to the following facts.  On December 5, 2021, Baclit sustained fatal injuries while aiding Steven Sloan ("Sloan"), who had been involved in a single car accident in Hopewell Township, Beaver County. Sloan's vehicle had crashed into a bridge retaining wall.  Baclit, who had been driving the automobile owned by his mother Lorri A. Hagwood ("Hagwood"), exited the vehicle to provide assistance.  While aiding Sloan, Baclit fell from the bridge retaining wall and suffered injuries resulting in his death.

_____

[1] This action was originally filed against Progressive Insurance Company ("Progressive") and other defendants.  On June 5, 2023, the trial court granted summary judgment in favor of Administrator and against Progressive, while the claims against the other defendants remained pending.  On July 3, 2023, the trial court substituted United for Progressive, amended the case caption to remove Progressive, severed Administrator's claims against United from the remaining claims, and specified that the order disposed of all claims against United.  Furthermore, on that same date, the trial court entered a separate order stating that the June 5, 2023 order constituted a final order with respect to Administrator's claims against United.  Thereafter, Administrator filed separate appeals as to the June 5, 2023 order (794 WDA 2023) and both of the July 3, 2023 orders (793 and 795 WDA 2023). Subsequently, these appeals were consolidated for our review.

[2]  75 Pa.C.S. §§ 1701-1799.7.

- 3 -

Sloan maintained automobile liability coverage through Farmers Insurance ("Farmers") in the amount of $100,000. Farmers tendered the limits of the policy to Administrator. Hagwood's vehicle was insured under a multi-vehicle policy provided by State Farm Mutual Insurance Company ("State Farm") with stacked UIM limits of $300,000.[3] As Sloan's policy was not sufficient to cover the damages sustained by Baclit, State Farm paid the limits in connection with Hagwood's policy. Baclit also insured his motorcycle through Progressive, which included $15,000 in UIM coverage. Progressive paid the limits to Administrator in accordance with this policy.

At the time of his death, Baclit was the president and sole officer of TKC Trucking, a trucking business. In October 2020, United issued a commercial automobile insurance policy to TKC Trucking (the "Policy"). In October 2021, United sent TKC Trucking a renewal declarations page, which renewed the Policy.

Under the Policy, TKC Trucking was the "named insured," and Baclit and Brian Matheny were designated as rated drivers. Policy Declarations Page, 10/2/2021, at 1-2. The Policy covered a 2008 GMC Sierra and a 2020 load

---

[3] At the time of his death, Baclit was forty-two years old and lived with Hagwood.

trail trailer. ***Id.*** at 2-3. The Policy provided $100,000 of stacked UIM coverage for the 2008 GMC Sierra.[4] ***Id.*** at 2.

Relevantly, the Policy stated the following regarding UIM coverage:

**INSURING AGREEMENT – UNDERINSURED MOTORIST COVERAGE**

Subject to the Limits of Liability, if you pay the premium for Underinsured Motorist Coverage, we will pay for damages, other than punitive or exemplary damages, which an insured is legally entitled to recover from the owner or operator of an underinsured auto because of bodily injury:

1. sustained by an insured;

2. caused by an accident; and

3. arising out of the ownership, maintenance, use, loading, or unloading of an underinsured auto.

\* \* \*

ADDITIONAL DEFINITIONS

When used in this endorsement, whether in the singular, plural, or possessive:

1. "Insured" means:

    a. if the named insured shown on the declarations page is a natural person:

---

[4] The Policy did not provide UIM benefits on the trailer. ***See*** Policy Declarations Page, 10/2/2021, at 2; ***see also*** Policy, 10/2/2021, at 46 (noting "we will pay no more than the Limit of Liability shown for [UIM] Coverage on the declarations page") (emphasis omitted), 47 ("For purposes of Stacked Limits of Liability, an insured auto does not include any trailer listed on the declarations page[.]") (emphasis omitted). Notably, section 1731 of the MVFRL "does not require UIM coverage to be offered on a trailer because a trailer does not qualify as a motor vehicle[.]" ***Erie Ins. Exch. v. Backmeier***, 287 A.3d 931, 942 n.5 (Pa. Super. 2022); ***see also*** 75 Pa.C.S. § 1731(a).

(i)       you or a relative;

(ii)     any person occupying your insured auto or a temporary substitute auto; and

(iii)    any person who is entitled to recover damages covered by this endorsement because of bodily injury sustained by a person described in (i) or (ii) above; or

b. if the named insured shown on the declarations page is a corporation, partnership, organization, or any other entity that is not a natural person:

(i)       any person occupying your insured auto or a temporary substitute auto; and

(ii)     any person who is entitled to recover damages covered by this endorsement because of bodily injury sustained by a person described in (i) above.

Policy, 10/2/2021, at 43-44 (emphasis omitted).[5] Additionally, the Policy defines "insured auto" or "your insured auto" as, in pertinent part, "[a]ny auto specifically described on the declarations page[.]" *Id.* at 2 (emphasis omitted). Further, "'You, 'your' and 'yours' refer to the named insured shown on the declarations page." *Id.* at 6 (emphasis omitted).

---

[5] The MVFRL defines "insured" as any of the following: "(1) An individual identified by name as an insured in a policy of motor vehicle liability insurance. (2) If residing in the household of the named insured: (i) a spouse or other relative of the named insured; or (ii) a minor in the custody of either the named insured or relative of the named insured." 75 Pa.C.S. § 1702. There is no definition for an "insured" who is not a natural person under the MVFRL.

On April 14, 2022, Administrator sent a letter to United demanding UIM payment under the Policy. By letter dated April 19, 2022, United responded to Administrator's UIM demand, stating the following:

> As previously noted, the handling of this claim is conducted under a Reservation of Rights. To date, our preliminary investigation indicates the policy may not provide coverage for this loss because it does not appear that [] Baclit will meet the definition of an "insured" per the policy language cited above nor does he appear to be "occupying" an insured auto or temporary substitute auto.

United Letter, 4/19/2022. Administrator provided United additional documentation on the claim and requested United confirm its position regarding UIM coverage. United ultimately denied Administrator's claim for coverage, stating:

> As the [automobile] [] Baclit drove to the scene of the incident is not a listed vehicle, it does not meet the definition of an insured auto nor does it meet the definition of a temporary substitute auto per the policy language. Also, [] Baclit was not occupying an insured auto when the loss occurred. [United] will not be responsible to pay for [UIM] Coverage to the Estate of Timothy Baclit as a result of this loss.

United Letter, 6/14/2022.

Administrator filed a complaint against United, which Administrator later amended, asserting claims of breach of contract, bad faith, wrongful death, and survival. Subsequently, United filed a motion for summary judgment as to Administrator's claims and Administrator filed a motion for summary judgment as to his breach of contract claim. As noted above, the trial court granted Administrator's motion for summary judgment and denied United's motion for summary judgment.

- 7 -

United filed a motion for reconsideration or motion for certification of interlocutory appeal. In response, the trial court severed the claims against United from the claims raised in the amended complaint against the other defendants, and Administrator withdrew the bad faith, wrongful death, and survival claims against United. Thereafter, the trial court entered an order stating that its entry of summary judgment was a final order under Pennsylvania Rule of Appellate Procedure 341(b)(1). United then timely appealed and complied with the court's order for the filing of a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925.

On appeal, United raises the following questions for our review:

1. Whether the trial court erred in finding that [Baclit] is entitled to [UIM] coverage without a requisite finding that [Baclit] met the definition of an "Insured" under the [United] Policy?

2. Whether the trial court erred in finding that the issue before it was one of first impression when various courts applying Pennsylvania law in analogous factual circumstances addressed the question of whether such claimants are entitled to UIM coverage and held that they are not?

3. Whether the trial court erred by relying on inapposite cases which discussed UIM exclusions and "stacking" issues?

4. Whether the trial court erred in denying [United's] Motion for Summary Judgment by basing its conclusion on the mistaken belief that the additional benefit of stacked coverage on the Policy was "illusory"?

United's Brief at 4.

Our standard of review of an order granting or denying a motion for summary judgment is as follows:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Erie Ins. Exch. v. Eachus*, 306 A.3d 930, 932-33 (Pa. Super. 2023) (citation omitted).

"Additionally, we note that interpretation of an insurance policy presents a pure question of law, over which our standard of review is de novo." *Rourke v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 116 A.3d 87, 91 (Pa. Super. 2015) (citation omitted); *see also Kramer v. Nationwide Prop. & Cas. Ins. Co.*, 313 A.3d 1031, 1039 (Pa. 2024). "[W]e are not bound by the trial court's conclusions of law, but may reach our own conclusions." *Kline v. Travelers Personal Sec. Ins. Com.*, 223 A.3d 677, 686 (Pa. Super. 2019).

As United's claims are interrelated, we address them together. United contends that the plain and clear language of the Policy establishes that Baclit did not meet the definition of an "insured" under the Policy, noting that the only named insured on the Policy was TKC Trucking. United's Brief at 15, 18-19, 29. According to United, Pennsylvania courts have consistently rejected

claims that an individual's position as an officer of a corporation confers UIM benefits to the claimant under a commercial auto insurance policy, and United condemns the trial court's attempt to distinguish these decisions. *Id.* at 19-24, 27 (citing, inter alia, ***Ins. Co. of Evanston v. Bowers***, 758 A.2d 213 (Pa. Super. 2000); ***Hunyady v. Aetna Life & Cas.***, 578 A.2d 1312 (Pa. Super. 1990)).[6]

United further asserts that the plain language of the definitions section of the UIM coverage endorsement required Administrator to prove that Baclit was operating an "insured auto" at the time of the accident to obtain stacked UIM coverage. *Id.* at 15-17. United observes that Baclit was driving Hagwood's vehicle at the time of his death, and this vehicle was not covered under the Policy. *Id.* at 17-18. United therefore claims that, contrary to the trial court's finding, Baclit was not entitled to UIM benefits and stacking did not apply in this case. *Id.* at 25, 27. United assails the trial court's reliance upon ***Gallagher v. Geico Indemnity Co.***, 201 A.3d 131 (Pa. 2019),[7] to reach

_____

[6] United also cites to federal district court cases to support its argument; however, we have long recognized that decisions issued by federal courts other than the United States Supreme Court "offer this Court persuasive, but not binding, authority." ***Bank of Am., N.A. v. Scott***, 271 A.3d 897, 910 n.6 (Pa. Super. 2022) (citation omitted). As we conclude that Pennsylvania state court decisions provide precedential authority to support our resolution of this matter, we do not address the cited federal cases.

[7] In its brief, United also argues that ***Rush v. Erie Ins. Exch.***, 265 A.3d 794 (Pa. Super. 2021), is inapposite to this case. United, however, filed a post-submission communication to this Court, noting that the Pennsylvania
*(Footnote Continued Next Page)*

its decision, contending that it is factually distinct from the present case—specifically, that the **Gallagher** claimant was a named insured under a policy that extended coverage and the pertinent issue related to the validity of an exclusion. United's Brief at 25-26. Lastly, United maintains that the stacked coverage under the Policy was not illusory here because there was a "possibility" that Baclit would qualify for stacked UIM benefits if he had been an occupant of an "insured auto" at the time of his injuries. **Id.** at 27-28.

The record reflects that in addressing the competing motions for summary judgment, the trial court first highlighted the UIM provisions in the MVFRL. Trial Court Opinion, 6/5/2023, at 10-12. The trial court further reviewed **Gallagher** and noted that Pennsylvania courts have not addressed the "issue of de facto waiver in connection with the commercial insurance policy language," concluding that "this is a case of first impression." **Id.** at 17; **see also id.** at 14-15, 21, 23-24 (addressing and reviewing cases cited by both parties). The trial court found that Administrator properly recovered or attempted to recover UIM coverage pursuant to section 1733 of the MVFRL[8]

---

Supreme Court recently issued a decision reversing this Court's decision. **Rush v. Erie Ins. Exch.**, 308 A.3d 780 (Pa. 2024). We do not find the reasoning in **Rush**, which dealt with the interplay between the "regular use" exclusion and the scope of UIM coverage under section 1731, to be applicable to the instant case, which deals with stacking UIM benefits under section 1738. **See id.** at 802; **see also id.** at 811 (Wecht, J., concurring).

[8] 75 Pa.C.S. § 1733(a) ("Where multiple policies apply, payment shall be made in the following order of priority: (1) A policy covering a motor vehicle
*(Footnote Continued Next Page)*

by obtaining coverage from Hagwood's State Farm policy, then other policies covering vehicles not involved in the accident, including seeking stacked coverage from United under the Policy. *Id.* at 20, 22.

The trial court observed that Baclit never signed any stacking waiver forms on the Policy; United charged, and TKC Trucking (through Baclit) paid, an increased premium for stacked coverage; and as the sole officer of the business, Baclit was an intended beneficiary of the coverage by paying premiums for stacked coverage. *Id.* at 24. Noting that United chose to provide stacked insurance coverage on a one-vehicle commercial policy where the injured party was both the sole officer of TKC Trucking and named as a rated driver in the Policy, the trial court found that United's attempt to deny coverage "serve[d] as a de facto waiver in violation of the language of the MVFRL." *Id.* at 27. Therefore, the trial court found Administrator, on behalf of Baclit, is entitled to collect UIM benefits from United, and granted his motion for summary judgment. *Id.* at 27-28.

As stated hereinabove, the facts of this case are uncontested; the only question before us is purely one of law, requiring us to determine whether Baclit was entitled to UIM benefits under the Policy. In addressing the question of law presented here, we begin by examining the interplay between

occupied by the injured person at the time of the accident. (2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.").

provisions of the MVFRL and the plain language of the Policy. The MVFRL is "comprehensive legislation governing the rights and obligations of the insurance company and the insured under liability insurance policies covering motor vehicles." **Rush**, 308 A.3d at 790 (citation omitted). "[T]he provisions of the MVFRL pertaining to the required scope of coverage and content of automobile insurance policies, and benefits payable thereunder, impose mandatory obligations applicable to all automobile insurance providers in this Commonwealth[.]" **Id.** (citation omitted).

The MVFRL specifically addresses the provision of UIM coverage by insurance companies, requiring "every motor vehicle insurance policy issued in Pennsylvania to include an offer of both [uninsured motorist ("UM")] and UIM [] coverage equal to the bodily injury liability amount." 75 Pa.C.S. § 1731(a); **see also Rush**, 308 A.3d at 790 ("Insurers in Pennsylvania are obligated to offer UIM coverage to their customers."). "[UIM] coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 Pa.C.S. § 1731(c). UIM coverage may be waived only through the use of the statutory waiver form appearing in section 1731(c); "[a]ny rejection form that does not specifically comply with this section is void." **Id.** § 1731(c.1).

Section 1738(a) of the MVFRL states that when multiple vehicles are insured on one or more policies providing UIM coverage, any UIM coverage is

"stacked" by default, i.e., the amount of coverage "shall be the sum of the limits for each motor vehicle as to which the injured person is an insured." *Id.* § 1738(a); *see also Gallagher*, 201 A.3d at 137 (noting that "stacked UM/UIM coverage is the default coverage available to every insured and provides stacked coverage on all vehicles and all policies"). As our High Court has recognized, section 1738(a) "unambiguously provides for inter- as well as intra-policy stacking." *Craley v. State Farm Fire and Cas. Co.*, 895 A.2d 530, 539 (Pa. 2006). "Intra-policy stacking is when more than one vehicle is insured under a single policy of insurance." *Backmeier*, 287 A.3d at 938 (citation omitted). "Inter-policy stacking[] is the addition of coverages for vehicles insured under different policies of insurance." *Id.* at 939 (citation omitted).

Although UM/UIM coverage is stacked by default, "a named insured may waive coverage providing stacking of uninsured or underinsured coverages[,] in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured." 75 Pa.C.S. § 1738(b). Further, "each named insured purchasing" UM/UIM coverage must be "provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage." *Id.* § 1738(c). As is the case for waiver of UIM coverage, stacking may also be waived through

the statutorily prescribed form contained in section 1738(d)(2); "[a]ny rejection form that does not comply with this section is void." ***Id.*** § 1738(e).

Additionally, when interpreting a policy of insurance, "we must apply general principles of contract interpretation, as, at base, an insurance policy is nothing more than a contract between an insurer and an insured." ***Gallagher***, 201 A.3d at 137 "[A]s such, the overarching goal of our interpretation of an insurance policy is to ascertain the intent of the parties as manifested by the language of the written instrument." ***Kramer***, 313 A.3d 1039. "In doing so, we are bound by the clear and unambiguous meaning of the policy; however, we are obligated to construe ambiguities in a light most strongly supporting the insured." ***Id.*** (citation and quotation marks omitted); ***see also Gallagher***, 201 A.3d at 137 (noting that "when the language of the policy is clear and unambiguous, a court is required to give effect to that language") (citation omitted). "The plain and ordinary meaning of a policy is also contextually constrained, as our understanding of the mutual intent of the parties in forming the insurance contract derives from consideration of the whole written instrument, not by reading its individual provisions in isolation." ***Kramer***, 313 A.3d at 1039 (citation omitted); ***see also Cigna Corp. v. Exec. Risk Indem., Inc.***, 111 A.3d 204, 212 (Pa. Super. 2015) (stating that "an insurance policy, like every other written contract, must be read in its entirety and the intent of the policy is gathered from consideration of the entire instrument") (citation omitted).

"Importantly, however, provisions of insurance contracts are invalid and unenforceable if they conflict with statutory mandates because contracts cannot alter existing laws." **Gallagher**, 201 A.3d at 137 (citation omitted); **see also Backmeier**, 287 A.3d at 946 (noting that "[a]s a general rule, stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws") (citation omitted). To that end, "[t]he provisions of the MVFRL are mandatory, and where insurance policy provisions fail to comply with the provisions of the MVFRL, the policy provisions will be found unenforceable." **Eachus**, 306 A.3d at 933 (citation omitted).

Against this backdrop, we observe the following, undisputed facts: TKC Trucking was the only "named insured" on the Policy; Baclit was the sole officer and president of TKC Trucking; Baclit was listed as a rated driver on the Policy; the Policy covered a single vehicle; Baclit, on behalf of TKC Trucking, did not sign either the statutorily-prescribed UIM coverage waiver form or stacking waiver form; and Baclit paid increased premiums under the Policy commensurate his decision to have UIM coverage and stacking benefits. **See** Policy Declarations Page, at 1-3. Thus, we must interpret the Policy in the context of Pennsylvania law to determine whether Baclit, as the sole

officer, must be regarded as an insured under the Policy and therefore entitled to stacked UIM benefits.[9]

Our Court has previously recognized that "the owner and/or officers of a corporation are 'class one' insureds[10] under a policy issued in the name of a corporation." *Miller v. Royal Ins. Co.*, 510 A.2d 1257, 1258 (Pa. Super. 1986), *aff'd*, 535 A.2d 1049 (Pa. 1988) (per curiam order). In *Miller*, appellee Mary Ann Miller ("Miller") was involved in an accident with an uninsured motorist while she was driving a vehicle owned by Wes II Air Freight ("Wes II") and assigned to her husband, Wes II's corporate secretary. *Id.* The vehicle was covered under a fleet vehicle insurance policy. *Id.* Without discussion of the policy language, this Court found that Miller was a class one

---

[9] As the Policy covered only one vehicle and stacking premiums were paid, "there can be no intra-policy stacking … because there is no second motor vehicle with UIM benefits covered by that single insurance policy upon which to combine, or 'stack,' the UIM coverage from the first motor vehicle with UIM benefits." *Backmeier*, 287 A.3d at 940; *see also Donovan v. State Farm Mut. Auto. Ins. Co.*, 256 A.3d 1145, 1153 (Pa. 2021) (noting that "there could be no intra-policy stacking with only one vehicle on 'the policy'") (citation omitted). Consequently, in this case, stacked benefits under the Policy were only available through inter-policy stacking. *Backmeier*, 287 A.3d at 939.

[10] "Class-one insureds include (1) the named insured, (2) any designated insureds, and (3) the spouse and relatives of either, while residents of the same household." *Est. of O'Connell ex rel. O'Connell v. Progressive Ins. Co.*, 79 A.3d 1134, 1139 (Pa. Super. 2013) (citations omitted).

insured under the policy.[11]  *Id.*  The Court went on to hold, however, that despite her status as an insured, she was not entitled to coverage because stacking was unavailable under a fleet insurance policy.  *Id.* at 1258-59.

Although the *Miller* Court does not provide clear reasoning to support its finding that Miller was an insured, it appears that the Court found that owners/corporate officers constitute de facto named insureds under a business automobile policy, and, as a result, the spouse of a corporate officer was also a "class one insured."  *See Lastooka v. Aetna Ins. Co.*, 552 A.2d 254, 256 n.1 (Pa. Super. 1988) (observing that the *Miller* claimant was not, in the traditional sense, a named insured nor the family member of a named insured, and recognizing that finding Miller to be a class one insured was likely "based upon the unanswered question posed in *Constriciane*, that being, whether the officers of a corporation are class one insureds under a policy issued in the name of the corporation").[12]

_____

[11] In making this determination, the *Miller* Court noted that our Supreme Court had previously reserved the question of whether the owner and/or officers of a corporation are class one insureds under a policy issued in a corporation's name, stating "[t]hat other day has arrived in the form of the case sub judice."  *Miller*, 510 A.2d at 1258 (citing *Utica Mut. Ins. Co. v. Contrisciane*, 473 A.2d 1005, 1011 n.4 (Pa. 1984)).

[12]  The *Lastooka* Court took issue with the conclusory holding in *Miller* that the wife of a corporate officer to be a class one insured under a corporate policy of insurance.  *See Lastooka*, 552 A.2d at 256 n.1.  We recognized, however, that *Miller* has not been expressly overruled, and we are therefore "compelled to follow *Miller* because the principle is stated so broadly and unequivocally."  *Id.*

The facts of the instant case are far more compelling than **Miller**, as Baclit was the sole officer and president of TKC Trucking, not one of many corporate officers. Nor was he the family member of a corporate officer. Indeed, Baclit was the person responsible for paying the premiums for the Policy and was the one who declined to waive UIM and stacking coverage for TKC Trucking. **See O'Connell**, 79 A.3d at 1139 ("The significance of the class-one designation lies in that there is a correlation between the premiums paid by the insured and the coverage a claimant could reasonably expect to receive.") (citation and quotation marks omitted); **see also Contrisciane**, 473 A.2d at 1010 (identifying one of the bases for stacking, as determined by the Pennsylvania Supreme Court, to be "that the intended beneficiary of an uninsured motorist policy is entitled to multiple coverage when multiple premiums have been paid").

Further, United's reliance on **Hunyady** and **Bowers** is unavailing, as those cases are wholly distinguishable. **See Bowers**, 758 A.2d at 214-17 (holding that the ward of a rehabilitation center was not "family" as defined by the center's insurance policy and thus not entitled to stacked UIM coverage after being struck by a vehicle); **Hunyady**, 578 A.2d at 1312-13 (finding that wife of a corporate officer who had unlimited use of a company vehicle insured to the corporation was not entitled to stacked UIM benefits following a car accident in which she was driving her personal vehicle because she had no

reasonable expectation of coverage under the corporate policy).[13]  We are bound by the *Miller* decision and therefore conclude that Baclit, as the sole officer and president of TKC Trucking, was a named insured under the Policy. *See Miller*, 510 A.2d at 1258; *Lastooka*, 552 A.2d at 256 n.1; *see also Commonwealth v. May*, 271 A.3d 475, 482 (Pa. Super. 2022) (stating that a three-judge panel of this Court "is bound by existing precedent and, therefore, lacks the authority to overturn another panel decision").[14]

To conclude otherwise would, as the trial court found, render the stacking benefit under the Policy illusory.  United argues that coverage would not be illusory, as stacked UIM coverage would have been available if Baclit had been operating a vehicle insured under the Policy at the time of the accident.  United's Brief at 28.  This contention, however, ignores the distinction between UIM coverage and stacked UIM coverage under the MVFRL.

_____

[13]  We note that the *Hunyady* Court's decision contradicts the holding in *Miller*.  Curiously, *Hunyady* stated that *Miller* "did not … make a specific determination as to whether the "class one" designation applied to the claimant, wife of a corporate officer, who was driving a company car at the time of her accident."  *Hunyady*, 480 A.2d at 1314.  As our discussion of *Miller* above reflects, the Court did so hold, but ultimately held that the designation did not matter because stacking was unavailable for fleet policies. *See Miller*, 510 A.2d at 1258.

[14]  While this is not the precise basis for the trial court's decision below, the law is clear that "we may affirm a trial court's ruling on any basis supported by the record on appeal."  *Lynn v. Nationwide Ins. Co.*, 70 A.3d 814, 823 (Pa. Super. 2013).

As to UIM coverage, our Supreme Court has explained:

UM/UIM coverage is triggered when the tortfeasor's liability coverage is not sufficient to cover the injuries incurred in an accident. Once implicated, the provision of underinsured motorist coverage is governed by Section 1733 … . [T]he "policy covering a motor vehicle occupied by the injured person at the time of the accident" is in first priority ("First Priority UIM policy"), regardless of whether the injured person would otherwise be an "insured" under the policy. 75 Pa.C.S. § 1733(a)(1). … If the injuries exceed the coverage of the First Priority UIM policy, then the injured person may seek recovery under a "policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured" ("Second Priority UIM policy"). 75 Pa.C.S. § 1733(a)(2).

**Generette v. Donegal Mut. Ins. Co.**, 957 A.2d 1180, 1189 (Pa. 2008). In the facts as presented in the case at bar, the First Priority UIM policy was Hagwood's State Farm policy, as that was the vehicle Baclit occupied at the time of the accident,[15] and the Policy constitutes a Second Priority UIM policy.

_____

[15] A person is considered to have been "occupying" a vehicle if, while lawfully using an insured vehicle,

(1) there is a causal relation or connection between the injury and the use of the insured vehicle;

(2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

(3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

*(Footnote Continued Next Page)*

In the scenario presented by United in its brief, the Policy would be the First Priority UIM policy. The concept of "stacking," however, does not come into play unless the insured has "more than one vehicle … insured under one or more policies providing uninsured or underinsured motorist coverage." 75 Pa.C.S. § 1738(a). In United's hypothetical, the insured (Baclit) would be seeking "primary" UIM coverage under the Policy as a single policy of insurance that insures a single vehicle. *See Nationwide Ins. Co. v. Schneider*, 906 A.2d 586, 590 (Pa. Super. 2006) (noting that a recovery from insurance covering the insured's vehicle involved in the accident was the appellant's "primary UIM insurer" under section 1733). Following the hypothetical through to its logical conclusion, Baclit would thereafter seek "stacked" UIM coverage from Hagwood's State Farm Policy and his motorcycle policy through Progressive. Simply stated, as a driver or operator of a vehicle insured under the Policy involved in an accident wherein Baclit was not at fault, he would recover First Priority UIM coverage from the Policy under sections 1731 and 1733, not stacked UIM coverage under section 1738.[16]

---

> (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Contrisciane*, 473 A.2d at 1009 (citation omitted).

[16] The two concepts are unquestionably distinct, as evidenced by the fact that the MVFRL requires insureds to execute separate waivers for UIM coverage (under section 1731(c)) and stacked UIM coverage (under section 1738(d)). *See supra*, pages 13-14.

Consequently, there is no mechanism for any individual to utilize the stacking benefits paid for by TKC Trucking under the Policy. As our Supreme Court held in *Gallagher*, this constitutes a de facto waiver of stacking benefits in violation of the MVFRL. *See Gallagher*, 201 A.3d at 132.

In *Gallagher*, our Supreme Court was presented a question as to the validity of "household vehicle" exclusion in a personal automobile insurance policy. In that case, Brian Gallagher ("Gallagher") purchased two policies from GEICO, one for his motorcycle and one for his automobile. *Id.* at 132-33. Gallagher "opted and paid for stacked UM and UIM coverage when purchasing both policies." *Id.* at 133. Gallagher was operating his motorcycle when William Stouffer ("Stouffer") drove through a stop sign without stopping and collided with Gallagher, causing Gallagher serious injuries. *Id.* at 132. Because Stouffer was underinsured, Gallagher sought stacked UIM coverage under his motorcycle and automobile policies. *Id.* at 133. GEICO paid Gallagher's UIM claim under his motorcycle policy; however, it denied the UIM claim under his automobile policy based on the household vehicle exclusion. *Id.*

The exclusion contained in the insurance contract stated: "This coverage does not apply to bodily injury while occupying or from being struck by a vehicle owned or leased by you or a relative that is not insured for Underinsured Motorists Coverage under this policy." *Id.* (citation omitted). GEICO determined that Gallagher suffered bodily injury while occupying his

motorcycle, which was not insured under his automobile policy, and the household vehicle exclusion therefore precluded him from receiving stacked UIM coverage. *Id.* The trial court granted summary judgment in GEICO's favor in an ensuing declaratory judgment action, and this Court affirmed. *Id.* at 134-35.

Our Supreme Court granted allowance of appeal and ultimately held that the "household vehicle" exclusion was unenforceable under section 1738 of the MVFRL because, under the facts of the case, the exclusion impermissibly acted as a de facto waiver of stacked UIM coverage. *Id.* at 132, 137-38. More specifically, the Court concluded:

> Here, it is undisputed that: (1) Stouffer, the tortfeasor who caused the accident, was underinsured; (2) Gallagher did not sign the statutorily-prescribed UIM stacking waiver form for either of his GEICO policies; and (3) he would have received the UIM coverage that he bought and paid for under both of his GEICO policies pursuant to [s]ubsection 1738(a) of the MVFRL, save for the "household vehicle exclusion" found in an amendment to the [a]utomobile [p]olicy for which no explicit, formal acknowledgement was provided….
>
> This policy provision, buried in an amendment, is inconsistent with the unambiguous requirements [s]ection 1738 of the MVFRL under the facts of this case insomuch as it acts as a de facto waiver of stacked UIM coverage provided for in the MVFRL, despite the indisputable reality that Gallagher did not sign the statutorily-prescribed UIM coverage waiver form. Instead, Gallagher decided to purchase stacked UM/UIM coverage under both of his policies, and he paid GEICO premiums commensurate with that decision. He simply never chose to waive formally stacking as is plainly required by the MVFRL.
>
> One of the insurance industries' age-old rubrics in this area of the law is that an insured should receive the coverage for which he has paid. Here, GEICO argues against this maxim by invoking

> the household vehicle exclusion to deprive Gallagher of the stacked UIM coverage that he purchased. This action violates the clear mandates of the waiver provisions of [s]ection 1738. Indeed, contrary to [s]ection 1738's explicit requirement that an insurer must receive an insured's written acknowledgement that he knowingly decided to waive UM/UIM coverage, the household vehicle exclusion strips an insured of default UM/UIM coverage without requiring an insurer to demonstrate, at a bare minimum, that the insured was even aware that the exclusion was part of the insurance policy. This practice runs contrary to the MVFRL and renders the household vehicle exclusion invalid and unenforceable. In fact, this case is a prime example of why household vehicle exclusions should not and cannot operate as a pretext to avoid stacking.

*Id.* at 137-38 (citation omitted).

In the absence of finding Baclit was an insured under the Policy pursuant to *Miller*, the language of the Policy (defining an "insured" in a corporate policy for purposes of stacking UIM benefits) operates as a de facto waiver of stacking coverage because, as in *Gallagher*, there is no ability for anyone to obtain stacked UIM benefits, despite the fact that United did not obtain the requisite waiver in direct violation of section 1738. *See id.* To the contrary, as in *Gallagher*, Baclit paid the increased premiums to obtain stacked UIM benefits under the Policy, and, as the sole officer of the company and the one who made the payments, reasonably expected to receive such benefits. *See id.* Therefore, unless Baclit is a named insured under the Policy, United's limited definition of who can constitute an "insured" for purposes of collecting stacked UIM benefits under this single-vehicle business automobile policy would violate the MVFRL. *See Gallagher*, 201 A.3d at 138 ("There simply is no reason that insurers cannot comply with the Legislature's explicit directive

to offer stacked UM/UIM coverage on multiple insurance policies absent a knowing [s]ection 1738 waiver[.]").

Based on the foregoing, we find no error of law or abuse of discretion in the trial court's decision. We therefore affirm the trial court's order granting Administrator's motion for summary judgment on his claim for stacked UIM benefits under the Policy and denying United's motion for summary judgment.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/23/2024